IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| KENDRA LEIGH HEARON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CASE NO. : _____ |
| K-VA-T FOOD STORES, INC., | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW,** the Plaintiff, Kendra Leigh Hearon ("Plaintiff" or "Ms. Hearon"), by and through counsel, Glaspie & Rickman, PLLC, and for her Complaint against K-VA-T Food Stores, Inc., and avers as follows:

### I.   PARTIES

1. Plaintiff, Kendra Leigh Hearon, is a qualified individual, with a seriously ill child, who can perform the essential functions of her job with or without reasonable accommodation. Ms. Hearon is a resident citizen of the State of Tennessee, County of Monroe.

2. Defendant, K-VA-T Food Stores, Inc., is a Virginia corporation, with its principal place of business 1 Food City Cir. E., Abingdon, VA 24210-1158. At all times material to the averments set forth herein, K-VA-T Food Stores, Inc., was engaged in the operation and management of retail grocery stores and transacts, or has transacted, business in the State of Tennessee, County of Blount. K-VA-T Food Stores, Inc. is authorized to conduct business in the State of Tennessee, and its registered agent is Northwest Registered Agent, Inc., and may be served with process at 116 Agnes Road, Suite 200, Knoxville, TN 37919.

1

## II.  JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1331 in that this action is brought pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 1601, *et seq*.

4. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the remaining causes of action averred in the Complaint. Such claims are so related to the claim within the original jurisdiction of this Court, they form part of the same case or controversy.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in Blount County, Tennessee.

6. At all times material to the averments set forth herein: (1) K-VA-T Food Stores, Inc. employed 50 or more employees; (2) within a 75-mile radius of Plaintiff's place of employment; and (3) Plaintiff had worked at least one year for Defendants, more than 1,250 hours.

## III.  GENERAL ALLEGATIONS

7. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-6 herein inclusive.

### A. *Ms. Hearon begins her employment with K-VA-T.*

8. Ms. Hearon was hired by K-VA-T Food Stores, Inc. in or around September 2019 as department head of the coffee shop within Food City store #651 located at 1715 W. Broadway Avenue, Maryville, Tennessee 37801, where she earned a wage of $13.00 per hour.

9. Ms. Hearon's immediate supervisor was Joe McCauley, Food City store #651's general manager.

10. In or around July 2020, Ms. Hearon was promoted within the company to the position of Human Resources Coordinator for Food City store #651 and earned an initial wage of

$15.00 per hour, but received a raise to $16.87 per hour by April 2023. (See attached Position Description as Exhibit 1.)

      B.  *Ms. Hearon receives approval for intermittent FMLA leave.*

11. Ms. Hearon is a single mother of two minor children, Cody Cash Hearon ("Cash") and Riley Beau Hearon ("Riley").

12. In July 2022, Cash became seriously ill resulting in Ms. Hearon seeking emergency medical care for her minor child with East Tennessee Children's Hospital in Knoxville, Tennessee.

13. At or near this time, Cash was diagnosed with pulmonary arterial hypertension ("PAH") and referred to the pediatric cardiology department of Vanderbilt Hospital in Nashville, Tennessee.

14. PAH is a serious medical condition that is identified by high blood pressure in the lungs which can damage the right side of the heart due to the walls of the pulmonary artery becoming thick and stiff restricting blood flow and overworking the heart. There is no known cure for this condition, but it can be treated to reduce symptoms to mitigate the damage to the heart.

15. Shortly after Cash received his PAH diagnosis, Ms. Hearon submitted an application for "rolling" family medical leave for Cash's serious medical condition. (See attached Exhibit 2.)

16. Ms. Hearon's application was dated July 26, 2022, and received by K-VA-T Food Stores, Inc. on or about August 1, 2022. Therein, Ms. Hearon provided her "best estimate" of leave needed as "1 week post-hospital discharge . . . [and] 2 weekdays/week intermittent absence for about 6 weeks."

17. Ms. Hearon further indicated in her application that Cash's medical provider, Dr. Rachel Sullivan, with Vanderbilt's pediatric cardiology department indicated that Cash would require lifetime care to monitor his oxygen, medication management, with frequent follow-up care.

18. Dr. Sullivan stated in the application that, over the following six (6) month, it will be medically necessary for Ms. Hearon to be absent from work to provide care for Cash on an intermittent basis at least two (2) times a week for one (1) day per episode.

19. Ms. Hearon's FMLA application for Cash's serious medical condition was approved by K-VA-T on or about August 1, 2022, where it was acknowledged that her use of leave would have to be unscheduled due to the uncertainty of Cash's need for medical treatment.

20. From the time of her FMLA being approved on August 1, 2022, for Cash's serious medical condition, to the best of Ms. Hearon's recollection, she took leave on the following dates:

  a. July 26, 2022 – August 1, 2022;

  b. August 15, 2022;

  c. August 17, 2022;

  d. August 24, 2022 (scheduled day off);

  e. September, 13, 2022;

  f. September 24, 2022 – October 1, 2022 (used paid vacation time);

  g. October 4, 2022 (partial day);

  h. October 7, 2022 (partial day);

  i. October 25, 2022 (partial day);

  j. October 26, 2022 (scheduled day off);

  k. April 6, 2023.

 C. <u>Ms. Hearon is approved for FMLA for her own serious medical condition.</u>

21. While Ms. Hearon's minor son was undergoing his treatment, she began to experience significant pain in her right foot. Once Cash's condition had stabilized, Ms. Hearon sought out the care of Tennessee Foot & Ankle in Lenoir City, Tennessee and discovered that she was suffering from a cyst that would require surgical removal.

22. In response to this serious medical condition, Ms. Hearon submitted a second FMLA application to K-VA-T which was subsequently approved. (See attached Exhibit 3.)

23. Ms. Hearon underwent her surgery on or about December 20, 2022, and was out on FMLA leave to recover until approximately January 30, 2023, when she returned to her position as human resources coordinator at Food City store #651.

24. Ms. Hearon returned to work without restrictions and was ready and able to perform all the duties her position required. Nonetheless, during her absence, the store manager, Mr. Joe McCauley, appointed Taylor Dyer as the interim human resources coordinator and kept her in that position after Ms. Hearon's return.

25. Following her return from FMLA leave in January, Ms. Hearon suffered from a kidney infection, a condition which she had struggled with for some time. This occurred on February 12, 2022, and she missed one (1) day of work as a result. This absence was excused with a note from her urologist, Dr. Jeff E. Flickenger.

26. On March 12, 2023, Dr. Flickenger diagnosed Ms. Hearon with a subsequent kidney infection that her kidney issues would require her to undergo a surgical procedure that would require a week to recuperate from. The surgery was scheduled to take place on March 21, 2023.

27. Ms. Hearon provided Mr. McCauley, her general manager, with notice of this procedure as soon as possible and allowed to take time off without filing for FMLA. Moreover,

5

Case 3:23-cv-00155-JEM    Document 1    Filed 05/04/23    Page 5 of 13    PageID #: 5

Mr. McCauley stated he understood the need for the surgery and that he suffered from the same condition and treated with the same physician as Ms. Hearon.

28. Ms. Hearon returned to her duties at Food City store #651 on March 27, 2023 without the need for restrictions or limitations.

D. *Ms. Hearon's general manager (Joe McCauley) retaliates.*

29. On September 13, 2022, Ms. Hearon was notified that Cash had developed serious symptoms from his PAH condition and that she would have to utilize her FMLA in order to travel from Maryville to Vanderbilt hospital. A trip of over 180 miles.

30. At this time, Mr. McCauley was out of the store on vacation leaving Ms. Hearon with the store's assistant manager, Brett Hill, as her immediate supervisor.

31. Ms. Hearon promptly informed Mr. Hill of her son's circumstances and proceeded, the following day, to take Cash to his medical appointment with the verbal permission of Mr. Hill.

32. Upon Mr. McCauley's return from vacation, Ms. Hearon received a written reprimand for utilizing her approved FMLA leave without seeking Mr. McCauley's permission despite him not being present and on vacation at the time the emergency arose.

33. Under protest, Ms. Hearon signed the reprimand which was given to her in the presence of both Mr. McCauley and assistant store manager, Denise Beal. This written reprimand was never mentioned again following this meeting.

34. Again, on October 25, 2022, Cash felt ill and was exhibiting symptoms of shortness of breath. In response, Ms. Hearon utilized her FMLA leave to seek medical attention at Vanderbilt.

6

35. On this occasion, Ms. Hearon informed her general manager of the need to take leave and permission was granted. However, Mr. McCauley was upset with Ms. Hearon's need to seek treatment for Cash and verbally berated her for taking the leave which he approved.

36. Mr. McCauley's behavior toward Ms. Hearon was extremely distressing to her. She sought the solace of her brother, Travis Light. After hearing of Mr. McCauley's treatment of his sister, Mr. Light contacted Ms. Hearon's district manager, Barry Brogan, who reached out to Ms. Hearon to let her know that her use of FMLA was not an issue and attempted to alleviate her concerns.

37. On or about April 5, 2023, Cash again developed concerning symptoms and Ms. Hearon contacted his treating physician at Vanderbilt who instructed her to take him to his primary care provider.

38. Ms. Hearon had kept Mr. McCauley updated and informed of her circumstances from the time she contacted Vanderbilt to let him know that she would likely need to utilize further FMLA leave to care for her son.

39. The following day, April 6, 2023, Ms. Hearon received a call from Cash's primary care provider who informed her that she needed to take Cash to East Tennessee Children's Hospital for necessary testing and treatment.

40. After receiving this call, Ms. Hearon reported to work until she had to leave to get Cash to his medical appointment at East Tennessee Children's Hospital. She arrived at Food City store #651 at approximately 8:00 a.m.

41. Once she arrived at work, she was confronted by Mr. McCauley regarding mail that was not sent to the corporate office earlier in the week.

7

42. Part of Ms. Hearon's job duties include transporting corporate mail from the store's office to the store's shipping area where it is transported to the corporate office in Abingdon, Virginia onboard a Food City delivery truck.

43. According to Mr. McCauley, certain items were not included in the mailbag that was delivered on April 1, 2023, and Ms. Hearon needed to find a way to get it delivered to the corporate office before leaving to take Cash to his medical appointment.

44. Ms. Hearon then contact another Food City store that had a delivery truck scheduled to travel to Abingdon that morning and, after clocking out for that day, delivered the mail to that store prior to picking up her son to seek his necessary medical treatment.

45. After dropping off her store's corporate mail at the Food City in Vonore, Tennessee, Ms. Hearon proceeded to take Cash for his tests at East Tennessee Children's Hospital and she returned to work the following day, April 7, 2023.

46. When Ms. Hearon reported to work on morning of April 7th, she was met by Mr. McCauley who called her from her office to register #7 where, in front of numerous store employees, he informed Ms. Hearon that she would no longer be the store's human resource coordinator and that she is now a cashier.

47. Ms. Hearon responded to this news by asking if this had anything to do with her using FMLA leave the prior day. Mr. McCauley responded angrily that she should have taken care of Cash on her scheduled day off.

48. Understandably upset by the words and actions of Mr. McCauley, Ms. Hearon excused herself from the area in an attempt to regain her composure after being openly berated and humiliated in front of her peers and co-workers.

8

49. Shortly thereafter, Mr. McCauley followed Ms. Hearon to her office where the humiliation continued in the presence of another store employee, Shari Warren. Given her shock at the unprompted demotion and her exhaustion from the previous day, Ms. Hearon requested that she be able to go home and process this new development. Mr. McCauley responded by stating "[i]f you walk out the door, I'm going to terminate you. I need your keys and badge."

50. This unprofessional and public humiliation of Ms. Hearon by the general manager, Mr. McCauley, created a hostile and unduly stressful working environment. These aggressive and confrontational conditions, coupled with the extreme stress of caring for her critically ill son, left Ms. Hearon in a state where she was unable to perform her job duties, whether those were the duties of human resources coordinator or cashier.

51. Ms. Hearon was then left with no choice but to leave the store to avoid further aggression and public humiliation by the general manager, Mr. McCauley, thus resulting in her unlawful termination from K-VA-T's employment.

## IV. CAUSES OF ACTION

1. *Interference*:
(*Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq.*)

52. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-51, herein, inclusive.

53. Plaintiff pleads herein additionally and alternatively to all other causes of action alleged in the Complaint, as may be amended.

54. Defendant K-VA-T qualifies as an 'employer' as defined by the FMLA, 29 U.S.C. § 2611(4).

55. Plaintiff is an 'eligible employee' as defined by the FMLA, 29 U.S.C. § 2611(2).

56. There was an 'entitlement to leave' as defined by the FMLA, 29 U.S.C. § 2612(1).

57. Defendant K-VA-T terminated Ms. Hearon's employment effective April 7, 2023, thereby severing Ms. Hearon's ability to take leave from work due to her son's serious health condition.

58. Defendant K-VA-T unlawfully interfered with Plaintiff's entitlement to FMLA leave, 29 U.S.C. § 2615(a)(1) and 29 U.S.C. § 2614(a)(1).

59. Defendant K-VA-T is liable pursuant to the FMLA, 29 U.S.C. § 2617(a).

60. As a direct and proximate result of Defendant K-VA-T's unlawful interference with Plaintiff's entitlement to leave as prescribed by the FMLA, she has suffered damages equal to the amount of lost wages, salary, employment benefits, and/or other denied or lost benefits because of Defendant K-VA-T's violation of the FMLA's leave entitlement provision, 29 U.S.C. § 2617(a)(1)(A)(i)(l).

61. As a direct and proximate result of Defendant K-VA-T's unlawful interference with Plaintiff's entitlement to leave prescribed by the FMLA, she is entitled to interest on damages incurred, 29 U.S.C. § 2617(a)(1)(A)(ii).

62. As a direct and proximate result of Defendant K-VA-T's unlawful interference with Plaintiff's entitlement to leave prescribed by the FMLA, Plaintiff is entitled to an additional amount of liquidated damages equal to the sum prescribed by 29 U.S.C. § 2617(a)(1)(A)(i)(l), along with interest as prescribed by 29 U.S.C. § (a)(1)(A)(ii).

63. As a direct and proximate result of Defendant K-VA-T's unlawful interference with Plaintiff's entitlement to leave prescribed by the FMLA, Plaintiff is entitled to recovery of her reasonable attorney's fees and costs incurred in bringing this action. 29 U.S.C. § 2617(a)(3).

64. As a direct and proximate result of Defendant K-VA-T's unlawful interference with Plaintiff's entitlement to leave prescribed by the FMLA, Plaintiff is entitled to such equitable relief as may be appropriate, including employment and reinstatement or, in the alternative, front-pay. 29 U.S.C. § 2617(a)(1)(B).

2. *Retaliation and Retaliatory Discharge*:
(*Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.*)

65. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1 – 64 herein, inclusive.

66. Plaintiff pleads herein additionally and alternatively to all other causes of action alleged in the Complaint, as may be amended.

67. Defendant K-VA-T unlawfully retaliated against Plaintiff for exercising or attempting to exercise her entitlement to leave pursuant to the FMLA, 29 U.S.C. § 2615(a)(2) and 29 U.S.C. § 2614(a)(1), by discharging and/or otherwise discriminating against Plaintiff because of her exercise or attempted exercise of her entitlement to leave pursuant to the FMLA.

68. As a direct and proximate result of Defendant K-VA-T's unlawful retaliation against Plaintiff, she has sustained damages equal to the amount of lost wages, salary, employment benefits, and/or other denied or lost benefits because of Defendant K-VA-T's violation of the FMLA's leave entitlement provision, 29 U.S.C. § 2617(a)(1)(A)(i)(l).

69. As a direct and proximate result of Defendant K-VA-T's unlawful retaliation against Plaintiff, she is entitled to interest on damages incurred, 29 U.S.C. § 2617(a)(1)(A)(i)(l), and calculated at the prevailing rate, 29 U.S.C. § 2617(a)(1)(A)(ii).

70. As a direct and proximate result of Defendant K-VA-T's unlawful retaliation against Plaintiff, she is entitled to an additional amount of liquidated damages equal to the sum

prescribed by 29 U.S.C. § 2617(a)(1)(A)(i)(l), along with interest as prescribed by 29 U.S.C. § 2617(a)(1)(A)(ii).

71. As a direct and proximate result of Defendant K-VA-T's unlawful retaliation against Plaintiff, she is entitled to recovery of her reasonable attorney's fees and costs incurred in bringing this action pursuant to 29 U.S.C. § 2617(a)(3).

72. As a direct and proximate result of Defendant K-VA-T's unlawful retaliation against Plaintiff, she is entitled to such equitable relief as may be appropriate, including employment and reinstatement, or in the alternative, front-pay. 29 U.S.C. § 2617(a)(1)(B).

### 3. *Damages*

73. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1 – 72 herein, inclusive.

74. As a direct and proximate result of each of the foregoing acts, conduct, and violations of the law alleged herein, Plaintiff has suffered damages in an amount and according to proof including, but without limitation, loss of employment, lost wages, loss of benefits, lost interest on wages and benefits, liquidated damages, actual monetary loss, inconvenience, embarrassment, humiliation, loss of lifetime earning capacity, and other incidental and/or consequential damages. Plaintiff seeks reinstatement or, in the alternative, front pay.

75. Plaintiff is further entitled to and seeks recovery of her reasonable attorneys' fees and costs pursuant to the FMLA.

76. Plaintiff further seeks an award of pre- and post-judgment interest as permitted by law.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff sues for pack pay and benefits and reinstatement or front pay and benefits in lieu of reinstatement, and liquidated damages for interference and retaliation pursuant to the FMLA, as she may be entitled to by law.

WHEREFORE, Plaintiff respectfully demands payment of her reasonable attorneys' fees and costs in bringing this action pursuant to the FMLA.

WHEREFORE, Plaintiff respectfully demands a jury of twelve be empaneled to hear this cause.

WHEREFORE, Plaintiff respectfully requests this Court award such other and further relief as may be appropriate and assess the costs of this cause against the Defendant.

Respectfully submitted this 4th day May, 2023.


BY: /s/ Jeffrey H. Glaspie
Jeffrey H. Glaspie (#033311)
*Attorney for Plaintiff*
GLASPIE & RICKMAN, PLLC
500 Park Road
Sevierville, TN 37862
Tele: 865-505-0123
Fax: 865-505-9799
Email: jeff@GandRlawfirm.com